## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Veronica Eshelby, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-01396-AT |
| *Plaintiff,* | **JURY TRIAL DEMANDED** |
| vs. | |
| L'Oréal USA, Inc. | |
| *Defendant.* | |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

## **Table of Contents**

I.      Introduction. ................................................................................................................ 1

II.     Parties. ........................................................................................................................ 2

III.    Jurisdiction and Venue. .............................................................................................. 2

IV.     Facts. ........................................................................................................................... 3

        A.      American consumers associate French beauty products with quality and
                prestige, and are willing to pay a corresponding price premium for them. ............ 3

        B.      In the beauty industry, if a product is prominently labeled "Paris,"
                consumers reasonably believe that it is from France and pay a premium for
                it. ........................................................................................................................... 4

        C.      The L'Oréal Products feature prominent "Paris" labels. ......................................... 8

        D.      The truth is that the L'Oréal Products are made in Arkansas, not Paris. ............. 11

        E.      Defendant's Paris Representations mislead reasonable consumers. ..................... 12

        F.      The Paris Representation drives demand and causes consumers to pay a
                price premium. ..................................................................................................... 16

        G.      Plaintiff was misled and harmed by Defendant's misrepresentations. ................ 17

        H.      Class action allegations. ....................................................................................... 19

V.      Claims ....................................................................................................................... 21

VI.     Jury Demand. ............................................................................................................ 32

VII.    Prayer for Relief. ...................................................................................................... 32

## I.        Introduction.

1.        Beauty products that are made in France, and specifically in Paris, are widely regarded as high-end, luxury items.  To convey to consumers that a beauty product is made in France, retailers put "Paris" on the label, and also include French-language descriptions.  This increases demand for the products and the price that American consumers are willing to pay for them (compared to say, beauty products that are made in the US or Canada).

2.        L'Oréal makes, labels, markets, distributes, and sells beauty products that bear a prominent "Paris" marking on the front label (the "Paris Representation").

3.        L'Oréal also includes descriptions in French text (e.g., "Fini Mat," "Sans Huile") on the label of its products.  This suggests to consumers that these products are imported from France, where the French-language descriptions would be useful to French consumers.  Here is an example of a L'Oréal product with the Paris Representation and French text:



4.      The Paris Representation, and the French text, is designed to convey to U.S. consumers that the products are made in France and imported into the US.  And L'Oréal charges US consumers a corresponding price premium, compared to similar beauty products that lack the Paris Representation.

5.      The truth however, is that Defendant's Products[1]  are not made in Paris or in France.  They are not even sold in France (such that the French language descriptions on them would be useful to French customers).  Instead, the Products are made (and even designed) for the US market by L'Oréal USA (based in New York) and manufactured in its factory in Arkansas, or elsewhere in the US or Canada.  None of the Products are made in Paris.

6.      The reality is that millions of American consumers are overpaying for L'Oréal "Paris" Products that are not what they claim to be.  Plaintiff brings this case individually and on behalf of other US consumers who purchased the L'Oréal Products, seeking fair compensation and seeking to put a stop to L'Oréal's misleading advertising.

II.      **Parties.**

7.      Plaintiff Veronica Eshelby is a citizen of California, domiciled in Orange County.

8.      The proposed class (identified below) includes citizens of every State within the United States.

9.      Defendant L'Oréal USA, Inc., is a Delaware corporation with a principal place of business in New York, New York.  Defendant makes, labels, distributes, sells, and markets the L'Oréal Products, and has done so throughout the applicable statute of limitations period.

III.      **Jurisdiction and Venue.**

10.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The

---

[1] Defendant's products (sold in the US) that bear the Paris Representation, but are not made in France, are referred to as the "L'Oréal Products" or "Products."

amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

11.     The Court has personal jurisdiction over Defendant because Defendant has its principal place of business in New York.

12.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant's principal place of business is in this district.

## IV.   Facts.

### A.   American consumers associate French beauty products with quality and prestige, and are willing to pay a corresponding price premium for them.

13.     As the New York Times documents, France's prestige in the international beauty industry began with perfume.  It then expanded to other beauty products.  By the 1970's, "[b]eauty products, an offshoot of the fragrance business," were "being manufactured … in virtually every region of France." Consumers recognized "[b]eauty" as an "inherent attribute of France" and beauty "products from France" became "famous all over the world." [2]

14.     The American market, in particular, associates French-made beauty products with luxury and prestige.  "France ranks first among foreign suppliers to the United States," and "France's share of the American market has been growing steadily and should continue, as world-renowned French perfume and cosmetic manufacturers expand their marketing of these lines to the U.S." [3]

15.     As consumer beauty blogs explain:

---

[2] https://www.nytimes.com/1976/05/16/archives/france-the-face-and-essence-of-beauty.html

[3] Id.

"The French seem to outclass the rest of the world in a myriad of things – wine, bread, cheese, even romance. But none of these things come close to their excellence in the beauty sector." [4]

"We've noticed an inarguable trend over the years—fiendish obsession and intrigue surrounding French beauty and all it encompasses." [5]

"There's an undeniable allure about the beauty and style choices of French women, from their chic trademark fringes to their classic wardrobe basics. For me, though, there's one specific area that I feel they've consistently excelled in more than most: skincare." [6]

16.     Because American consumers associate French-made beauty products with excellence and prestige, they are willing to pay a substantial premium for products that they believe to be made in France and imported into the US.

**B.      In the beauty industry, if a product is prominently labeled "Paris," consumers reasonably believe that it is from France and pay a premium for it.**

17.     L'Oréal's competitors' products illustrate what consumers reasonably expect: that if a product has a "Paris" representation on the front label, it is actually made in France and imported.

18.     For example, skincare company Caudalie makes a "Paris" representation on its packaging (and includes French descriptions):

---

[4] https://www.annieandre.com/french-skincare-brands/
[5] https://www.byrdie.com/french-makeup-brands
[6] https://www.whowhatwear.co.uk/french-skincare



19.     And the Caudalie products are actually made in the Paris area: [7]



20.     As a second example, personal care product company Nuxe also makes a "Paris" representation on its products:



21.     And again, the Nuxe products are actually made in France: [8]

---

[7] https://en.caudalie.com/faq/products/
[8] https://us.nuxe.com/our-history.list

NUXE is a French brand founded by Aliza Jabès and a pioneer in natural-origin cosmetology. Each skincare product is formulated and manufactured in France to meet pharmaceutical quality requirements and combines the marvels of nature with the prowess of science, while awakening the senses. (45 patents pending - FR).

22.     As a third example, cosmetics company Clarins also makes a "Paris" representation on its products (and includes French descriptions):



23.     Clarins is also made in France: [9]

## N°2
## Beauty "Made in France"

In France, where skincare has always been paramount, his success was immediate. Word soon spread and Clarins products became available worldwide. Today, Clarins continues to design and produce its products in France and remains faithful to its original philosophy —listening to women to truly understand their needs and developing safe, naturally-derived, highly-effective skincare products.

24.     Because these products convey that they are made in France, they command

---

[9] https://www.clarinsusa.com/en/10-reasons-to-trust-clarins/

substantial price premiums over comparable products not from France.

25.     And this practice is not limited to the French beauty industry.  Maille mustard

makes a "Paris" representation on its products too.  And it only does this for products that are

actually made in France.  For its mustard made outside of France, it removes this "Paris"

representation, so as not to mislead consumers.  Contrasting examples are shown below:



*This mustard says "Paris" and it is actually made in France.* [10]

---

[10] https://us.maille.com/collections/maille-originale/products/honey-mustard



*This mustard does not say "Paris," because it is made in Canada and Maille does not want to mislead consumers.* [11]

**C.    The L'Oréal Products feature prominent "Paris" labels.**

26.    L'Oréal USA makes, labels, markets, distributes and sells the L'Oréal Products in the United States.  It has done so at all relevant times, during all applicable statutes of limitations.

27.    L'Oréal USA is based in New York (not France).  The L'Oréal Products are sold to American consumers by online retailers, as well as brick-and-mortar stores.

28.    Defendant marks each L'Oréal Product with a prominent "Paris" representation on the front of the packaging.  Representative examples of L'Oréal Products are shown below.  Each L'Oréal Product bears a Paris Representation substantially similar to the ones on the example products shown below.

---

[11] https://us.maille.com/collections/maille-originale/products/dijon-originale-mustard

8






29.     These representations are materially the same across all of the accused L'Oréal

Products.

30.     In addition to including the Paris Representation, many of the L'Oréal Products

9

also include text in the French language such as descriptions of the product and/or instructions for

use.

      31.     L'Oréal also uses the Paris Representation extensively in its advertisements.

      32.     For example, its website prominently displays the Paris Representation on the

home page:



https://www.lorealparisusa.com/



https://www.lorealparisusa.com/about-us

      33.     As another example, Defendant's Amazon store features the Paris Representation

prominently, at the top of the front page: [12]



**D.      The truth is that the L'Oréal Products are made in Arkansas, not Paris.**

34.      The truth is that the L'Oréal Products are not made in Paris, or even France. Instead, during the relevant statute of limitations period, the L'Oréal Products were made in other locations, such as North Little Rock, Arkansas, which is home to L'Oréal's largest global manufacturing plant. [13]

---

[12] https://www.amazon.com/stores/LOrealParis/LOrealParis/page/EF96A034-207F-4A7B-BFB9-820DB59A02DB
[13] https://metrolittlerockalliance.com/success-stories/loreal/;
https://katv.com/news/local/loral-usa-to-add-45-jobs-with-12-million-expansion-of-north-little-rock-plant



*L'Oréal's Arkansas plant*

35.     In fact, the L'Oréal Products are not even designed in France (much less made there and then imported into the U.S.).  These Products are made and sold by "L'Oréal USA," which is based in New York.  L'Oréal USA employs 12,000 people and over 470 U.S. product researchers and scientists.  This includes product developers that work specifically on the products bearing the Paris Representation.  And on the back of each product in tiny print (where consumers are not looking), each Product bears the stamp of the company that is actually responsible for designing them: "L'Oréal USA, New York, NY."

**E.     Defendant's Paris Representations mislead reasonable consumers.**

36.     Based on the Paris Representation, reasonable consumers (including Plaintiff and Class members) reasonably understand that the Products are made in France and imported into the United States, when in fact they are not.

37.     When a consumer product prominently displays the name of a city or country on its label (for example, "Paris" or "Belgium"), consumers reasonably understand this to be a representation that the product is made in that city or country.  *See, e.g., Hesse v. Godiva Chocolatier, Inc*., 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (denying motion to dismiss claims asserting that reasonable consumers understood a "Belgium 1926" representation on the label of

Godiva chocolates to mean that the chocolates were manufactured in Belgium).

38.     And this is especially true of the "Paris" label specifically.  As explained above (with examples), in the beauty industry (and other French industries), the "Paris" label is applied to products that are actually made in France.  Further, the French-language descriptions suggest that the Products are actually made and sold in France, for French consumers, and imported into the US.  In contrast, the French text does not make any sense for products made in the US, for sale in the US.

39.     Notably, the word "Paris" is not part of Defendant's company name.  Quite the opposite, Defendant's name is "L'Oréal USA, Inc."  And in other contexts (i.e., in contexts other than in advertisements and packaging displayed to consumers), Defendant does not make the Paris Representation and instead makes clear that its products are made in the USA.  For example, on the internal walls of its Hudson Yard headquarters, the word "Americas," rather than the Paris Representation, appears directly under the L'Oréal logo.



40.     As a second example, the sign on Defendant's Arkansas Plant does not make the Paris Representation and instead the word "USA" appears directly under the L'Oréal logo.



41.     Furthermore, that Defendant has incorporated the Paris Representation into the brand name of its "L'Oréal Paris" line of beauty products is no excuse to mislead consumers.  A company cannot evade consumer protection laws by purporting to incorporate a false or misleading representation into a brand name or trade name.  A false or misleading representation is false or misleading regardless of whether it is a standalone tag-line or statement, or incorporated into a brand or trade name.  By analogy, it would be misleading for Kraft to create a brand of cheese products called "Kraft Organic" and then affix a label bearing the name of that brand to non-organic cheese.  Whether part of a brand name or not, reasonable consumers would see the label "organic" on the cheese and reasonably believe the cheese is organic.  By the same token, reasonable consumers see the label "Paris" on the L'Oréal Products and reasonably believe those products are made in Paris.

42.     Nothing on the front label, or in any of Defendant's advertisements, states or suggests that the L'Oréal Products are not actually manufactured in Paris, and are instead manufactured in Arkansas and elsewhere.  To the contrary, in each L'Oréal Product, Defendant hides this information on the back or side of the label, in small text.  Here is a representative

14

example: [14]



43.    This fine print does not stop reasonable consumers from being misled.

44.    First, because the front of the package prominently purports to represent where the products are from ("Paris"), alongside French-language text, consumers have no reason to go hunting for contradictory information on the back or side of the package.

45.    Second, given the placement and size of such statements—on the back or side of the packaging, at the bottom of a long block of text including various instructions, descriptions, and ingredients (often in English and French), in small font—reasonable consumers would not notice the statement.  In fact, Defendant designed these statements specifically so that they would go unnoticed by reasonable consumers (as opposed to putting them on the front of the label, like the Paris Representation).

46.    Defendant knows that its labeling is misleading to reasonable consumers.  In fact,

---

[14] https://www.amazon.com/LOreal-Paris-Color-Treated-Moisturizes-Replenishes/dp/B078PJKJSP/ref=dp_coos_2?p

15

it is Defendant's intent to mislead consumers.  Defendant is aware that its competitors are using

"Paris" to mean actually made in Paris, because this is what the claim means to consumers.

Defendant is also aware of how American consumers will interpret French-language text, which

only makes sense for products actually imported from France.  In fact, there is no reason for

Defendant to include French text, other than to misleadingly convey that the Products come from

France.  In addition, a large company like Defendant conducts extensive consumer research, and

has data showing that its American consumers believe that the Products are made in Paris and

imported.

     **F.**     **The Paris Representation drives demand and causes consumers to pay a price premium.**

     47.     As described above, consumers are willing to pay more for beauty products if they

believe that those products are from France.  Consumers are also willing to purchase beauty

products that they otherwise would not purchase, if they believe that those products are made in

France.

     48.     Each member of the proposed class has been exposed to the same or substantially

similar unfair, fraudulent, deceptive, and misleading practices.  Each L'Oréal Product displays the

same Paris Representation prominently on the front of the packaging and/or the product itself.  All

the L'Oréal Products create the same impression that they were made in France.

     49.     The Paris Representation has artificially increased demand for the L'Oréal

Products.  Plaintiff and class members have therefore paid a price premium for the L'Oréal

Products, as a direct result of Defendant's deceptive and misleading claims.

     50.     In addition, and in the alternative, Plaintiff and class members would not have

purchased the L'Oréal Products at all if they had known that the L'Oréal Products were not made

in France.

51.     Accordingly, Plaintiff and each member of the proposed class has suffered an injury in fact, and has lost money as a result of, Defendant's unfair, fraudulent, deceptive, and misleading practices.

**G.      Plaintiff was misled and harmed by Defendant's misrepresentations.**

52.     In 2021, Ms. Eshelby bought L'Oréal Ever Pure Shampoo, L'Oréal Sleek It Iron Straight Heatspray, L'Oréal Elvive Total Repair 5 Power Restore Treatment, and L'Oréal Voluminous Original Mascara near her home in Orange County.  For example:



53.     Ms. Eshelby purchased each of these products every 2-3 months throughout 2021. The purchases were made at a Walmart in Orange, CA, Target in Orange, CA, and on Amazon.com.

54.    Ms. Eshelby saw and relied on the Paris Representation on the front label of the products.  Based on the Paris Representation and the French language descriptions on certain products, Ms. Eshelby believed that she was purchasing products that were made in France and imported into the United States.  However, unbeknownst to Ms. Eshelby, the products were made in Canada and the United States.

55.    Ms. Eshelby saw and relied on the prominently placed "Paris" label on the front of the package, and did not notice or read the fine print on the side or back of the packaging disclosing that the L'Oréal Products were made in the US and Canada.

56.    Ms. Eshelby would not have purchased the products, or would have paid less for the products, had she known the truth.  As a result, Ms. Eshelby suffered an injury in fact and lost money as a result of Defendant's deceptive representations.

57.    Even though Plaintiff was misled, Plaintiff likes L'Oréal Products, and would continue to purchase them at a fair price (i.e., at a price without the premium resulting from the inclusion of a false Paris Representation).  However, absent an injunction prohibiting Defendant from using the Paris Representation on products that are not made in France, the prices for the L'Oréal Products will remain inflated by Defendant's use of the Paris Representation.  As a result, absent an injunction, Plaintiff cannot purchase the L'Oréal Products at a fair price, even though she would like to.

58.    In addition, Plaintiff would purchase the L'Oréal Products—even at their existing prices—if they were in fact made in France.  However, absent an injunction, Plaintiff will not be able to rely on any representation by Defendant that any L'Oréal Products were made in Paris.  As a result, Plaintiff will not purchase L'Oréal Products containing the Paris Representation, even though she would like to if they were in fact made in Paris.

**H.      Class action allegations.**

59.      Plaintiff brings certain claims on behalf of the proposed class of: all persons who purchased a L'Oréal Product in the United States during the applicable statute of limitations (the "Nationwide Class").

60.      For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in certain identified states (the "Consumer Protection Subclass").

61.      For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who purchased L'Oréal Products in California (the "California Subclass").

62.      The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity*

63.      The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  Based on the pervasive distribution of L'Oréal Products, there are millions of proposed class members.

*Commonality*

64.      There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- Whether the Paris Representation is deceptive and misleading;

- Whether Defendant violated state consumer protection statutes;

- Whether Defendant committed a breach of express warranty; and,

- Damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality

65.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased L'Oréal Products.

### Predominance and Superiority

66.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

67.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  For example, a core liability question is common: whether Defendant breached an express warranty by falsely marketing products that were not made in France with the Paris Representation.

68.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

### Adequacy

69.     The interests of the members of the proposed class and each subclass will be

adequately protected by Plaintiff and their counsel.  Plaintiff's interests are aligned with, and do not conflict with, the interests of the members of the proposed class or subclasses that they seek to represent.  Moreover, Plaintiff has retained experienced and competent counsel to prosecute the class and subclasses' claims.

## V.    Claims

### Count I: Violations of State Consumer Protection Acts
#### (on behalf of the Consumer Protection Subclass)

70.    Plaintiff incorporates each and every factual allegation set forth above.

71.    This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
| --- | --- |
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following; |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |

| | |
|---|---|
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |

| | |
|---|---|
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

72.     Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendant's conduct, including the false labelling of the L'Oréal Products and sale of those misleading products to Plaintiff and Class members, violates each statute's prohibitions.

73.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decisions of Class members.  Defendant's misrepresentations were misleading to a reasonable consumer, and Plaintiff and Class members reasonably relied on Defendant's misrepresentations.

74.     Defendant intended that Plaintiff and the proposed Class members would rely on its materially deceptive representations.  Defendant was aware that the L'Oréal Products were not made in France.

75.     For applicable statutes, Plaintiff is providing written notice and a demand for correction, as described below.  Upon the expiration of any governing statutory notice period, Plaintiff and the Class seek all available injunctive or monetary relief.

76.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the L'Oréal Products if they had known that the Products were not made in France, and/or (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation.

77.     In this way, Plaintiff and the members of the proposed Class have suffered an ascertainable loss, in an amount to be determined at trial.

### Count II: Violation of California's Unfair Competition Law (UCL)
**(on behalf of the California Subclass)**

78.     Plaintiff incorporates each and every factual allegation set forth above.

79.     As alleged in Count I, state consumer protection laws are sufficiently similar such that Plaintiff may bring a claim on behalf of the Consumer Protection Subclass.  In the alternative, Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

80.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

81.     Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged below and incorporated here.

***The Fraudulent Prong***

82.     As alleged in detail above, Defendant's "Paris" representations were false and misleading.  These representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.

***The Unfair Prong***

83.     Defendant violated established public policy by violating the CLRA and FAL, as alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

84.     The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the origin of a consumer product.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading consumer products only injure healthy competition and harm consumers.

85.     Plaintiff and the Class could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

*   *   *

86.     For all prongs, Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing L'Oréal Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

87.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the L'Oréal Products.

88.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

89.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the L'Oréal Products if they had known that the Products were not made in France, and/or (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation.

### Count III: Violation of California's False Advertising Law (FAL)
**(on behalf of the California Subclass)**

90.     Plaintiff incorporates each and every factual allegation set forth above.

91.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

92.     As alleged more fully above, Defendant has falsely advertised L'Oréal Products by prominently labeling them "Paris" and falsely representing that the products are made in France.

93.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

94.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing L'Oréal Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

95.     In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the L'Oréal Products.

96.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

97.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased L'Oréal Products if they had

known that the Products were not made in France, and/or (b) they overpaid for the Products

because the Products are sold at a price premium due to the misrepresentation.

## Count IV: Violation of California's Consumer Legal Remedies Act (CLRA)
### (on behalf of the California Subclass)

98.     Plaintiff incorporates each and every factual allegation set forth above.

99.     Plaintiff brings this cause of action on behalf of herself and members of the

California Subclass.

100.     Plaintiff and the other members of the California Subclass are "consumers," as the

term is defined by California Civil Code § 1761(d).

101.     Plaintiff, the other members of the California Subclass, and Defendant have

engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

102.     The conduct alleged in this Complaint constitutes unfair methods of competition

and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was

undertaken by Defendant in transactions intended to result in, and which did result in, the sale of

goods to consumers.

103.     As alleged more fully above, Defendant has violated the CLRA by falsely

representing to Plaintiff and the other members of the California Subclass that the L'Oréal

Products are made in France, when in fact the products are made outside of France.

104.     As a result of engaging in such conduct, Defendant has violated California Civil

Code § 1770(a)(4), (a)(5), (a)(7), and (a)(9).

105.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and

reasonable consumers.  Defendant knew, or should have known through the exercise of

reasonable care, that these statements were inaccurate and misleading.

106.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff

27

saw, read and reasonably relied on them when purchasing L'Oréal Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

107.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the L'Oréal Products.

108.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

109.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased L'Oréal Products if they had known that the Products were not made in Paris, and/or (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation.

110.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Eshelby, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.

111.    CLRA § 1782 NOTICE.  On February 10, 2022, a CLRA demand letter was sent to Defendant's headquarters and New York registered agents, via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  Defendant did not respond within 30 days of receipt.  Accordingly,  Plaintiff and the California subclass will seek all monetary relief allowed under the CLRA (in addition to an injunction, reasonable attorneys' fees, and all other available relief).

112.    A CLRA venue declaration is attached.

### Count V:  Breach of Express Warranty
#### (on behalf of the Nationwide Class)

113.    Plaintiff incorporates each and every factual allegation set forth above.

28

114.    Plaintiff brings this count individually and for the Nationwide Class.

115.    Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or seller of the L'Oréal Products, issued material, written warranties by labeling the products with "Paris."  This was an affirmation of fact about the products (i.e., a representation about the country of origin) and a promise relating to the goods.

116.    This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

117.    In fact, the L'Oréal Products do not conform to the above-referenced representation because, as alleged in detail above, they are not made in France.  Thus, the warranty was breached.

118.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on February 10, 2022.

119.    Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased L'Oréal Products if they had known that the Products were not made in France, or (b) they overpaid for the Products because the Products are sold at a price premium due to the warranty.

## Count VI: Breach of the Magnuson-Moss Warranty Act
### (on behalf of the Nationwide Class)

120.    Plaintiff incorporates each and every factual allegation set forth above.

121.    Plaintiff brings this count individually and for the Nationwide Class.

122.    Defendant supplied L'Oréal Products to consumers and the L'Oréal Products are consumer products.

123.    Defendant issued material, written warranties by labeling the products with

"Paris."  This was an affirmation of fact about the material in the products (i.e., a representation about the country of origin of the beauty product within the products) and a promise relating to the goods.

124.  Defendant represented that the L'Oréal Products were made in France.

125.  This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

126.  In fact, the L'Oréal Products do not conform to the above-referenced representation because, as alleged in detail above, they are not made in France. Thus, the warranty was breached.

127.  Plaintiff provided Defendant with notice of this breach of warranty (including her intent to seek classwide relief), by mailing a notice letter to Defendant's headquarters, on February 10, 2022.

128.  Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased L'Oréal Products if they had known that the Products were not made in France, or (b) they overpaid for the Products because the Products are sold at a price premium due to the warranty.

## Count VII: Negligent Misrepresentation
### (on behalf of the Nationwide Class)

129.  Plaintiff incorporates each and every factual allegation set forth above.

130.  Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

131.  As alleged in detail above, Defendant's labeling represented to Plaintiff and Class members that the L'Oréal Products were made in France.

132.  This representation was false.  As alleged above, the L'Oréal Products are not

made in France.

133.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

134.    Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

135.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the L'Oréal Products.

136.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

137.    Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased L'Oréal Products if they had known that the Products were not made in France, and/or (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation.

## Count VIII: Quasi-Contract/Unjust Enrichment
### (on behalf of the Nationwide Class)

138.    Plaintiff incorporates each and every factual allegation set forth above.

139.    Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

140.    As alleged in detail above, Defendant's false and misleading labeling caused Plaintiff and the Class to purchase L'Oréal Products and to pay a price premium for these products.

141.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

142.    Plaintiff and the Nationwide Class seek restitution.

## VI.      Jury Demand.

143.     Plaintiff demands a jury trial on all issues so triable.

## VII.     Prayer for Relief.

144.     Plaintiff seeks the following relief individually and for the proposed Class and

Subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, and enhanced damages where applicable;

- Restitution;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law; and

- Any additional relief that the Court deems reasonable and just.

Dated: March 18, 2022                         Respectfully submitted,

                                              By: */s/ Christin Cho*

                                              DOVEL & LUNER, LLP
                                              Christin Cho (Cal. Bar No. 238173)
                                              christin@dovel.com
                                              Jonas B. Jacobson (Cal. Bar No. 269912)
                                              jonas@dovel.com
                                              Simon Franzini (Cal. Bar No. 287631)
                                              simon@dovel.com
                                              201 Santa Monica Blvd., Suite 600
                                              Santa Monica, CA 90401
                                              Telephone: (310) 656-7066
                                              Facsimile: (310) 656-7069

                                              *Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Veronica Eshelby, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-01396-AT |
| *Plaintiff*, | **CLRA VENUE DECLARATION** |
| vs. | |
| L'Oréal USA, Inc. | |
| *Defendant*. | |

1

I, Veronica Eshelby, declare as follows:

1.      I am a named Plaintiff in this action.

2.      In 2021, I purchased L'Oreal Ever Pure Shampoo, L'Oreal Sleek It Iron Straight

Heatspray, L'Oreal Elvive Total Repair 5 Power Restore Treatment, and L'Oreal

Voluminous Original Mascara in Orange County, CA.  I have personal knowledge

of this fact and I can competently testify to it.

3.      I purchased each of the above-mentioned products every 2-3 months throughout

2021.  I made these purchases at a Walmart and Target in Orange, CA, as well as

on Amazon.com.

4.      I understand that L'Oreal USA, Inc.'s principal place of business is in New York,

New York, which is within the Southern District of New York.

5.      I understand that, because L'Oreal USA, Inc.'s principal place of business is in

the Southern District of New York, this is a proper place for my claims.


I declare under penalty of perjury, under the laws of the United States and the State of New

York, that the foregoing is true and correct to the best of my knowledge.

Signature:  _____

Veronica Eshelby

Date:      3/18/2022
       _____