# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VERONICA ESHELBY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> vs.<br><br>L'ORÉAL USA, INC.,<br><br>    Defendant. | Case No. 1:22-cv-01396<br><br>**L'ORÉAL USA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**<br><br>Judge:  Analisa Torres<br><br>Action Filed: February 18, 2022 |

## MEMORANDUM OF LAW IN SUPPORT OF

## L'ORÉAL USA, INC.'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

II.    STATEMENT OF FACTS ................................................................................1

III.    LEGAL STANDARD ....................................................................................3

IV.    ARGUMENT .................................................................................................4

    A.    The Claims Should Be Dismissed Because The Labels Are Not Plausibly Pleaded To Be False Or Misleading. ..............................................4

        1.    All Claims Should Be Dismissed Unless The Complaint Plausibly Pleads That It Is "Likely" To Mislead A Reasonable Consumer. ..............4

        2.    The Brand Name On All Packages, And French Language Translations On Some Of Them, Do Not Falsely State Or Deceptively Mislead A Reasonable Consumer That The Products Are Made In France. ..............6

        3.    Eshelby Fails To Plead Her California Misrepresentation Claims Under Rule 9(b). ..............13

    B.    Eshelby's Magnuson-Moss Warranty Act Claim Fails. ..............15

        1.    Eshelby Has Not Met The Jurisdictional Requirements To Bring A Magnuson-Moss Claim. ..............15

        2.    Eshelby Fails To Plead That The Products Cost More Than $5. ..............16

        3.    Eshelby Fails To Plead A Warranty As Defined Under MMWA. ..............17

    C.    Eshelby Lacks Standing To Bring Claims For Products Not Purchased. ..............18

    D.    Eshelby Lacks Standing to Seek Injunctive Relief. ..............21

V.    CONCLUSION ..............22

CERTIFICATE OF SERVICE ..............24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Alaei v. Kraft Heinz Food Co.*,
   No. 15CV2961-MMA (DHB), 2016 WL 11621800 (S.D. Cal. Apr. 22, 2016)......................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................................3

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020).....................................................................................................21

*Bowling v. Johnson & Johnson*,
   65 F. Supp. 3d 371 (S.D.N.Y. 2014).......................................................................................17

*Bowring v. Sapporo Co.*,
   234 F. Supp. 3d 386 (E.D.N.Y. 2017) .................................................................................8, 11

*Brazil v. Dole Food Co.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) .....................................................................................17

*Culver v. Unilever U.S., Inc.*,
   No. CV 19-9263-GW-RAOX, 2021 WL 2943937 (C.D. Cal. June 14, 2021)..........7, 8, 10, 13

*Dang v. Samsung Elecs., Co., Ltd.*,
   No. 14-CV-00530-LHK, 2018 WL 11348883 (N.D. Cal. July 2, 2018)..................................5

*Dickey v. Advanced Micro Devices, Inc.*,
   No. 5:15-CV-04922-RMW, 2016 WL 1375571 (N.D. Cal. Apr. 7, 2016).............................13

*DiMuro v. Clinique Lab'ys, LLC*,
   572 F. App'x 27 (2d Cir. 2014) ...............................................................................................18

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020)................................................................................21, 22

*Ebin v. Kangadis Food Inc.*,
   No. 13 CIV 2311 JSR, 2013 WL 3936193 (S.D.N.Y. July 26, 2013)....................................16

*Ebner v. Fresh Inc.*,
   838 F.3d 958 (9th Cir. 2016) .....................................................................................................6

*Fermin v. Pfizer Inc.*,
   215 F. Supp. 3d 209 (E.D.N.Y. 2016) ...................................................................6

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)...........................................................................4, 5

*Floyd v. Am. Honda Motor Co.*,
   966 F.3d 1027 (9th Cir. 2020) ......................................................................15, 16

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
   No. 12-MD-2413 RRM RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .................17,18

*Gavilanes v. Gerber Prod. Co.*,
   No. 1:20 CV-05558, 2021 WL 5052896 (E.D.N.Y. Nov. 1, 2021)........................................15

*Green v. STi Prepaid, LLC*,
   No. 10 CIV 2180 JSR GWG, 2010 WL 4055575, at *4 (S.D.N.Y. Oct. 18,
   2010), *report and recommendation adopted*, No. 10 CIV. 2180 JSR, 2010 WL
   4642349 (S.D.N.Y. Nov. 16, 2010) .....................................................................16

*Gudgel v. Clorox Co.*,
   514 F. Supp. 3d 1177 (N.D. Cal. 2021) ...................................................................5

*Hodges v. King's Hawaiian Bakery West, Inc.*,
   Case No. 21-cv-04541-PJH, 2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) .................9, 10, 11

*Hughes v. Ester C Co.*,
   330 F. Supp. 3d 862 (E.D.N.Y. 2018) ...................................................................4

*Izquierdo v. Mondelez Int'l, Inc.*,
   No. 16-CV-04697 (CM), 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016) .......................22

*Jessani v. Monini N. Am., Inc.*,
   744 F. App'x 18 (2d Cir. 2018) ....................................................................5, 12

*Jones v. Nutiva, Inc.*,
   No. 16-CV-00711-HSG, 2016 WL 5210935 (N.D. Cal. Sept. 22, 2016)...............................18

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .....................................................................13, 14

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011).........................................................................6, 12

*Lugones v. Pete and Gerry's Organic, LLC*,
   440 F. Supp. 3d 226 (S.D.N.Y. 2020)...................................................................6

*Marcavage v. City of New York*,
 689 F.3d 98 (2d Cir. 2012).............................................................................21, 22

*Matnikas v. Kellogg Co.*,
 910 F.3d 633 (2d Cir. 2018).....................................................................................5

*Miller v. Ghirardelli Chocolate Co.*,
 912 F. Supp. 2d 861 (N.D. Cal. 2012) ............................................................18, 19

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
 710 F.3d 71 (2d Cir. 2013)......................................................................................21

*Nelson v. MillerCoors, LLC*,
 246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..................................................................8, 11

*Romero v. Tropicale Foods*,
 LLC, Case No. EDCV 21-1165, 2021 WL 6751908 (C.D. Cal. Dec. 22, 2021)...........9, 12, 13

*Sarr v. BEF Foods, Inc.*,
 No. 18CV6409ARRRLM, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ................................17

*Shamamyan v. FCA US LLC*,
 No. CV195422DMGFFMX, 2020 WL 3643481 (C.D. Cal. Apr. 1, 2020).....................13, 14

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV
 Television Litig.*,
 758 F. Supp. 2d 1077 (S.D. Cal. 2010)....................................................................13

*Stanwood v. Mary Kay, Inc.*,
 941 F. Supp. 2d 1212 (C.D. Cal. 2012) ..................................................................14

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*,
 564 F. Supp. 2d 833 (N.D. Ill. 2008) ......................................................................16

*Sugawara v. Pepsico, Inc.*,
 No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115 (E.D. Cal. May 21, 2009) .......................5

*Tabler v. Panera LLC*,
 No. 19-CV-01646-LHK, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019)..............................19

*Twohig v. Shop-Rite Supermarkets, Inc.*,
 519 F. Supp. 3d 154 (S.D.N.Y. 2021)......................................................................12

*Warren v. Whole Foods Mkt. Grp.*,
 No. 19-CV-6448 (RPK) (LB), 2021 WL 5759702 (E.D.N.Y. Dec. 3, 2021)............................4

*Weisblum v. Prophase Labs, Inc.*,
 88 F. Supp. 3d 283 (S.D.N.Y. 2015)........................................................................16

## FEDERAL STATUTES

15 U.S.C.
    § 2301(6) ................................................................................................................17
    § 2302(e) ................................................................................................................16
    § 2310(d) ................................................................................................................15

## FEDERAL RULES AND REGULATIONS

Federal Rule of Civil Procedure Rule 9(b) ......................................................................13

## I.    <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Veronica Eshelby alleges that she believes all L'Oréal Paris brand products are manufactured in France because the word "Paris" is in the brand name and Paris is in France. She also claims she was misled into this belief because some of the text on some of the products have French language translations immediately following the English.  FAC ¶¶ 2-6, 17, 36-38. She sues for violation of three California and forty-three other states' consumer protection laws, the Magnuson-Moss Warranty Act ("MMWA"), breach of express warranty, negligent misrepresentation, and unjust enrichment.

Eshelby's claims each fail as a matter of law because a reasonable consumer would not be misled.  Further, the Magnuson-Moss claim should be dismissed because Eshelby does not meet the jurisdictional requirements under the MMWA, fails to plead the price of the products, and fails to plead a warranty covered under the MMWA.

If the Court finds she does plead any claim, it should nevertheless dismiss Eshelby's claims about products she never purchased; she lacks standing to complain about products unless she can show they are "nearly identical" to ones that misled her.  Finally, Eshelby's claim for injunctive relief fails because she has alleged that she will not purchase the product as-is in the future, precluding future harm.

## II.    <u>STATEMENT OF FACTS</u>

Eshelby alleges that L'Oréal Paris brand products contain the word "Paris" on the label, and that some of them, sold in both the United States and Canada, also contain French language translations of some of the text.  FAC ¶¶ 2-6, 17, 36-38.  She concedes that they also expressly state the correct geographic origin of manufacture of the product, on the back panel of the package.  FAC ¶ 42.

Eshelby's complaint starts by showing images of products she did not purchase.  Here, instead, are the four that she does claim to have bought:

  

FAC ¶ 52; Kao Decl. Exh. A-D.  She bought the products on Amazon.com, or at a Walmart or a Target in the City of Orange, in Orange County, California.  FAC ¶ 53.  She doesn't say which product was purchased at which store, or exactly when the purchases took place.  *Id.*  She does not say how much she paid for any of them, or whether they cost more or less than $5 each.

While Eshelby only alleges that she purchased these four products specifically, FAC ¶ 52, she makes claims against all L'Oréal Paris products not made in France generally, FAC p. 2 ¶ 6 n.1.

Eshelby does not claim that the product labeling here is literally false:  she does not claim that the word "Paris" was a representation that the product was made in Paris, and indeed, she acknowledges that the back of the label disclosed the actual country of manufacture.  FAC ¶ 42.

She instead claims that she inferred that the products were manufactured in France because the brand name L'Oréal Paris has the word Paris in it, and Paris is in France.  FAC ¶ 54.  For some of the products, she adds to this that she noticed French language on the label, and that French language descriptions "suggest that the Products are actually made and sold in France, for French consumers, and imported into the [U.S.]."  FAC ¶ 38.  She alleges "there is no reason for Defendant to include French text, other than to misleadingly convey that the Products come from France."  FAC ¶ 46.

Finally, Eshelby initially alleges that she would not have purchased the hair styling product (or heatspray), shampoo, conditioner, and mascara if she had known they were not made in France.  FAC ¶ 56.  However, she then alleges an intent to purchase the products if, in the future, the products were priced less, or alternatively, were manufactured in France.  FAC ¶¶ 57-58.  Based on her alleged future intention, she includes a claim for injunctive relief.  FAC ¶ 144.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.* at 555 (citation omitted).  In order for a claim to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

IV.   **ARGUMENT**

A.   **The Claims Should Be Dismissed Because The Labels Are Not Plausibly Pleaded To Be False Or Misleading.**

"It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Eshelby claims she believed that "Sleek-It Iron Straight Heatspray" is manufactured in France because it bears the L'Oréal Paris brand name, and that she thought "Ever Pure Moisture Shampoo" is manufactured in France because it bears the L'Oréal Paris brand name and has French language on the label. Her claims should be dismissed because the complaint does not plausibly plead that a significant portion of the consuming public, acting reasonably in the circumstances, would be misled.

1.   **All Claims Should Be Dismissed Unless The Complaint Plausibly Pleads That It Is "Likely" To Mislead A Reasonable Consumer.**

Consumer protection laws do not give a remedy to everyone who claims they misunderstood a label, however implausibly. If the label or advertisement is not likely to mislead a reasonable consumer, the claim should be dismissed.

A false or misleading statement is a required element of each of Eshelby's claims. *Warren v. Whole Foods Mkt. Grp.*, No. 19-CV-6448 (RPK) (LB), 2021 WL 5759702, *3 (E.D.N.Y. Dec. 3, 2021) (to state claim under NY GBL §§ 349 and 350, "plaintiffs must plead that [defendant's] packaging is likely misleading on its own, in context, to a reasonable consumer."); *id.* at *8 (dismissing Magnuson-Moss and unjust enrichment claims for failure to allege predicate state law claim); *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 870 n.11 (E.D.N.Y. 2018) ("To state a plausible claim for misrepresentation under the FAL [the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.], CLRA [Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.], and . . . UCL [Unfair Competition Law, Cal. Bus. & Prof.

Code §§ 17200 et seq.] . . . including the 'unfair' prong, a plaintiff 'must allege that Defendant's representations are likely to deceive a reasonable consumer . . . . Because such an inquiry is common to all three statutory schemes, courts often analyze them together.'" (citations omitted); *Dang v. Samsung Elecs., Co., Ltd*., No. 14-CV-00530-LHK, 2018 WL 11348883, at *7-8 (N.D. Cal. July 2, 2018) (dismissing claims under the unlawful and unfair prongs of the UCL); *Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115, at *5 (E.D. Cal. May 21, 2009) (dismissing breach of warranty claim under California law because a reasonable consumer would not be misled); *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021) (dismissing negligent misrepresentation cause of action under California law because a reasonable consumer would not be misled). Each of Eshelby's claims thus require that she plausibly plead that the labeling was false or misleading to a reasonable consumer.

Whether a statement is false or misleading is assessed based on the reasonable consumer standard. "To prevail on . . . consumer fraud claims under New York and California law, Plaintiffs must establish that [defendant]'s allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink*, 714 F.3d at 741; *Matnikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer," including at the pleading stage. *Fink*, 714 F.3d at 741. "And in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.* at 742.

"[P]laintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19

(2d Cir. 2018) (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)); *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020) (quoting same).  Eshelby must show that members of the public are "likely" to be deceived.  A mere possibility that a defendant's label on its products "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner" is thus insufficient.  *Ebner*, 838 F.3d at 965 (citation omitted).  Eshelby must "plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.*; *see also Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) ("The term 'likely' indicates that deception must be probable, not just possible.").  "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *Id.* (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).

Thus, Eshelby's claims should be dismissed unless she plausibly alleges that consumer deception was "probable."  As explained below, she does not.

### 2. The Brand Name On All Packages, And French Language Translations On Some Of Them, Do Not Falsely State Or Deceptively Mislead A Reasonable Consumer That The Products Are Made In France.

There has been a spate of recent cases involving claims by consumers that they were misled about manufacturing location.  Where the claims are weak like the ones made here – where no affirmative misrepresentation or misleading information about manufacturing location is presented – district courts have increasingly concluded that the proper outcome is an early dismissal, before anyone is required to incur the substantial expense of discovery, because they do not plausibly plead that a significant portion of the consuming public will be misled.  The

argument that reasonable consumers will believe that a product is manufactured in a particular place, without reading the whole label to see where the product is actually manufactured, simply because of a geographic reference in labeling or advertising, or even foreign language text on a label, has been repeatedly made and rejected, particularly where a consumer who regards the manufacturing location as important can find the answer elsewhere on the packaging.

The most strikingly similar case is that of the Dijon-style mustard brand Maille.[1]  On the front of the package, it said "Paris," "Depuis 1747," and "Que Maille";[2] on the back, "Made in Canada."  *Culver v. Unilever U.S., Inc.*, No. CV 19-9263-GW-RAOX, 2021 WL 2943937, at *8-9 (C.D. Cal. June 14, 2021).  The claim that a reasonable consumer would be misled was dismissed at the pleading stage.  Plaintiffs claimed that "mere presence of the words 'Paris,' 'Depuis 1747' and 'Que Maille' on the front label" of mustard products would mislead reasonable consumers into believing products were made in France; "the references to France and the French language on the labels led him to believe that the Products were made in France." *Id.* at *2.  The case was dismissed, because reasonable consumers would not think so:

> [T]he allegedly misleading words do not by themselves actually indicate the country where the Product are manufactured.  While the front labels contain two words in the French language – which are prepositions (i.e., "depuis" and "que") – and two proper nouns (i.e., "Paris" and "Maille"), there are no concomitant words or reference to a geographic source or origin.  For example, there are no phrases such as "from Paris (i.e., "de Paris"), "product of France," or even "imported."  All of the remaining many words on the front label are in English.  Likewise, the translation of the French words into English does not suggest the place of manufacture. . . . Thus, the pleadings do not delineate a basis, other than

---

[1]    There is some irony here:  Eshelby pointed to the "Paris" reference on Maille at paragraph 25 of the complaint, believing erroneously that all Maille mustard with this label is made in France.  FAC ¶ 25.  The *Culver* case shows that Eshelby was wrong about the meaning of "Paris" in this context, too, and unreasonably so as a matter of law.

[2]    "Depuis 1747" means "from 1747" in French; "Que Maille" means "That Maille," also in French.  *Culver*, 2021 WL 2943937 at *1.  Antoine-Claude Maille had opened his first boutique in Paris in 1747 to sell a range of aromatic mustards and became the official mustard supplier of King Louis XV; the second Maille boutique was in Dijon, France.  *Id.* at *1.

unfounded supposition, for a consumer to believe that the Products were made in France.

*Id.* at *8.  The Court held that a reasonable consumer who was interested in the country of origin of the product should look "at the full packaging for the answer, which was clearly and correctly provided on the rear label."  *Id.* at *9.

Foster's is "Australian for beer."  *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017).  But despite that slogan, a history of formerly importing the brand from Australia, a kangaroo on the beer can, imagery from the Australian national flag on the beer can, a series of television advertisements titled "How to Speak Australian," and a website calling it an "Australian beer brand," the district court applied *Fink* and dismissed New York consumer protection and false advertising claims, and common law claims for fraud and breach of express warranty.  The court determined that the label was not misleading as a matter of law, because it didn't affirmatively state that the product was from Australia, and instead, the back of the can had an explicit disclaimer that referred to the U.S. brewer.  "[D]isclaimers fail to cure allegedly misleading representations on the front of packaging only where the alleged misrepresentation is clearly stated and the disclaimer is exceedingly vague or requires consumers to make inferences."  *Id.* at 675.  "In sum, the images of a kangaroo and a constellation 'and allusion to the company's historic roots in [Australia] are eclipsed by the accurate disclosure statement."  *Id.* at 676 (quoting *Bowring v. Sapporo Co.*, 234 F. Supp. 3d 386, 391 (E.D.N.Y. 2017)).[3]

---

[3]     As explained in *Bowring*, Sapporo beer is not from Japan, and neither the Japanese name or heritage of the company, nor slogans like "Sapporo – the Original Japanese Beer" and "Japan's Oldest Brand," would mislead a reasonable consumer.  *Bowring*, 234 F. Supp. 3d at 391-92 (dismissing claims because no reasonable consumer would likely be misled that Sapporo beer was made in Japan despite labels' allusion to Japanese heritage and reference to being "imported"; product disclosed it was imported from Canada, even though plaintiff alleged it was in "very small font" and on the back of the can).  A reasonable consumer who wants to know

"Helados Mexico" brand "paletas" (a type of ice cream product) are made in Ontario, California. *Romero v. Tropicale Foods,* LLC, Case No. EDCV 21-1165, 2021 WL 6751908, *1 (C.D. Cal. Dec. 22, 2021). Plaintiff Pedro Romero purchased a variety pack, then sued claiming he thought the product was made in Mexico because of the brand name "Helados Mexico" and Spanish words on the packaging; three other plaintiffs sued with him, including one who bought a "La Michoacana" variety pack in New York, and claimed he was misled by the brand name and Spanish words. *Id.* at *1-2. The court rejected that a reasonable consumer could be deceived by a product name that includes a reference to either Mexico or the Michoacan region; "There must be some other label representation in connection with a country . . . to make the case Plaintiffs strain to do." *Id.* at *5. The Spanish phrases would not mislead a reasonable consumer because they were translations of English language on the same package. *Id.*

Similarly, "King's Hawaiian's Original Hawaiian Sweet Rolls," baked in Torrance, California (but with its company heritage tracing to Hilo, Hawaii), was sued by consumers claiming they reasonably believed the rolls were from Hawaii, and made with traditional ingredients. *Hodges v. King's Hawaiian Bakery West, Inc.*, Case No. 21-cv-04541-PJH, 2021 WL 5178826 (N.D. Cal. Nov. 8, 2021). Dismissing claims under California Business and Professions Code section 17200, the Consumer Legal Remedies Act, and the False Advertising Law (Business and Professions Code section 17500), as well as New York GBL §§ 349 and 350 claims and a common law claim for unjust enrichment, the court explained that a reasonable consumer would not be misled by the brand name: "[T]he court finds here that the mere use of a

---

where the product is from would not make up their mind based on such general cues, but would instead read the fine print saying where the product is actually made.

geographic reference, including a reference to the company's historical origin, does not convey a representation about a product's current origin." *Id.* at *6.

Following the reasoning of these cases, which each apply the "reasonable consumer" tests from *Fink*, *Jessani*, and *Ebner* to dismiss the same claims pleaded here, this Court should dismiss the complaint. The brand name L'Oréal Paris doesn't indicate a place of manufacture, any more than the brand names "King's Hawaiian" or "Helados Mexico" do. A reasonable consumer understands L'Oréal Paris is just a brand name, not a representation of origin. The word "Paris" always immediately follows and is in the same color as "L'Oréal," and the brand name L'Oréal Paris is often in a different color than all of the other text on the label. *See* Kao Decl. Exh. A, C (Sleek It, Elvive); FAC ¶ 28 (Triple Active, Infallible Pro-Matte). The word "Paris" appears in stylized form, capitalizing all letters except "i," like this: "PARiS." It does not appear somewhere else as making some kind of representation about an attribute of the product, as other language on the label does. It doesn't state "Made in Paris," or more to the point, as Eshelby claims she believed, "Made in France." There is no reference to importation, except on the back label where the actual manufacturing origin appears (and then, only if the product is actually imported).

Meanwhile, reasonable consumers know that if they're truly interested in the place of manufacture, they can usually find it on the back of the product, along with other information like the list of ingredients. Eshelby concedes that it was correctly labeled there on the products she purchased. FAC ¶¶ 42, 35. Even if the brand name had plausibly confused Eshelby, she should have looked at the whole package if she really cared about the location of the facility that produced her shampoo conditioner, heatspray, and mascara. *Culver*, 2021 WL 2943937, at *9 (plaintiff should "be expected to look at the full packaging for the answer, which was clearly and

correctly provided on the rear label"); *Bowring*, 234 F. Supp. 3d at 391 ("The use of a trademarked star symbol and allusion to the company's historic roots in Japan are eclipsed by the accurate disclosure statement [on the side or back label]."); *Hodges*, 2021 WL 5178826, at *6 ("statement on the back label of defendant's packaging . . . is plainly sufficient to tell consumers where the sweet rolls are produced"); *Nelson*, 246 F. Supp. 3d at 674 ("The idea that consumers purchase products based on certain of a label's statements or images (e.g., pictures of a constellation and a kangaroo) but are blind to others (e.g., a statement in plain English of where Foster's Beer is brewed) in close proximity on that label strains credibility.").

Eshelby claims she was further gulled by seeing French language on some, but not all,[4] of the L'Oréal Paris products she bought. FAC ¶ 54. The Ever Pure shampoo product, for example, has some (but not all) of its English language label translated into French, albeit in smaller print and not in bold. The product line name, "Ever Pure Sulfate-Free Color Care System," is entirely in English and untranslated, which would tend to refute that the product was made in, or for, the French market. The next series of phrases on the principal display panel does include translations, but with the French clearly presented after the English. As in *Romero*,

---

[4]   Eshelby doesn't address the apparent contradiction in her own reasoning: If she thought that the L'Oréal Paris products with French language were from France because she noticed the French language, then L'Oréal Paris products without French language, and bought in the same Target or Walmart, would not seem to be from France. Eshelby repeatedly purchased L'Oréal Paris "Sleek It Iron Straight Heatspray" with "3 Day Sleek + 450° Protection" "For All Heat Tools," and with a back panel likewise entirely in English. She also repeatedly bought "Elvive Total Repair 5" "Power Restore" "Repair Concentrate With Protein" "Rinse It Or Leave It" "Fortify Hair To Strengthen Against Future Damage" for "Damaged Hair," with a back panel likewise entirely in English. If the language on the label informs her beliefs about where the product is manufactured, then when confronted with a clearly English language label and the same brand name, she could not have remained confused that "L'ORÉAL PARiS" meant that all of the products were made in France.

the translation of certain phrases does not mislead about manufacturing location.  2021 WL 6751908 at *5.

Eshelby's pleading argues the case further, stating that the only conceivable reason to have French language on a label is because the product is made in France:

> Defendant is also aware of how American consumers will interpret French-language text, which only makes sense for products actually imported from France.  In fact, there is no reason for Defendant to include French text, other than to misleadingly convey that the Products come from France.

FAC ¶ 46; *see also* FAC ¶ 38 ("French language descriptions suggest that the Products are actually made and sold in France, for French consumers, and imported into the [U.S.].").  This allegation does not meet the plausibility standard.  Here in the North American market, the neighboring country of Canada requires bilingual labels in English and French in its Consumer Packaging and Labelling Act and Regulations, because, contrary to Plaintiff's allegation, people speak and read French throughout the world.[5]  Nor do "made and sold" always go together such that label language indicates manufacturing location; products can be made for a French-speaking market by an Anglophone factory, and vice versa.  Plausibility is defeated by "the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *Id.* (quoting *L-7 Designs*, 647 F.3d at 430).

In sum, Eshelby fails to plausibly allege a representation where "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Jessani*, 744 F. App'x at 19 (citation omitted); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021).  While Paris is indeed in France, and every label here had the word "Paris," that alone, with no indication that the products were

---

[5]      *See, e.g.*, https://www.competitionbureau.gc.ca/eic/site/cb-bc.nsf/eng/01248.html (last visited May 5, 2022) at § 2.1.2 ("The product identity must be shown in English and French.").

"made in Paris" or "from Paris" is insufficient to mislead a reasonable consumer. *Culver*, 2021 WL 2943937, at *8; *Romero*, 2021 WL 6751908, at *4. The use of French language translations on some products also would not mislead "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances." The truth is: "L'Oréal Paris" is L'Oréal's trademark, and merely evokes its company history: the company was founded in Paris, and the global headquarters are still located there. *Culver*, 2021 WL 2943937, at *8.

### 3.    Eshelby Fails To Plead Her California Misrepresentation Claims Under Rule 9(b).

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Pro. 9(b). In order to meet Rule 9(b)'s heightened pleading standard, the complaint's factual allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *See Shamamyan v. FCA US LLC*, No. CV195422DMGFFMX, 2020 WL 3643481, at *3 (C.D. Cal. Apr. 1, 2020). "A plaintiff therefore 'must include a description of the 'time, place, and specific content of the false representations as well as the parties to the misrepresentations.''" *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1092 (S.D. Cal. 2010). Federal courts apply Rule 9(b)'s particularity requirement to California misrepresentation claims. *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (specifically holding that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL); *Dickey v. Advanced Micro Devices, Inc.*, No. 5:15-CV-04922-RMW, 2016 WL 1375571, at *3 (N.D. Cal. Apr. 7, 2016) (holding the same regarding plaintiff's UCL, FAL, CLRA, and negligent misrepresentation claims based on allegedly misleading advertising regarding number of cores in central processing units).

With respect to consumer misrepresentation claims, a complaint fails to meet the Rule 9(b) standard if the plaintiff does not specifically allege the content of the allegedly misleading advertisement relied upon and when those advertisements were relied upon. *See Shamamyan*, 2020 WL 3643481, at *8 ("Plaintiff's allegations regarding unidentified representations made at unknown times in Defendant's 'advertising campaign(s) focus[ing] on its vehicles being free of defects' and 'product brochures, pamphlets, and media concerning the Subject Vehicles sold to Plaintiffs and others similarly situated' do not provide sufficient factual content to satisfy Rule 9(b)'s heightened requirements."); *Kearns*, 567 F.3d at 1126 (affirming dismissal of UCL and CLRA claims grounded in fraud because the plaintiff did not allege "when he was exposed to" the allegedly misleading advertisements and "which sales material he relied upon in making his decision to [make a purchase]"); *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1219-20 (C.D. Cal. 2012) (dismissing fraud claims because the plaintiff "point[ed] to no particular advertisements or promotional materials that she was personally exposed to").

Here, in the FAC, Eshelby points to the "L'Oréal Paris" brand name as one of the representations that she allegedly relied on in believing the products were made in France such that she purchased the products. FAC ¶ 54. However, Eshelby also alludes to her reliance on "the French language descriptions on certain products" but does not allege (i) which French language descriptions; or (ii) on which purchased products. *See id.* She also fails to allege with specificity where and when she was purportedly misled by these statements. *See* FAC ¶ 53 (generally alleging that the products were purchased "every 2-3 months throughout 2021" at a Target or Walmart or online, without specifying which store or online website, on which specific date). Meanwhile, to the extent that Eshelby is intending to sue on other alleged statements described in the complaint – for example, the sign inside L'Oréal USA's headquarters in New

York, or a sign outside a manufacturing facility in Arkansas, *see* FAC ¶¶ 39-40; advertising on the L'Oréal or Amazon websites, FAC ¶¶ 32, 33; or on labels of products she didn't buy, FAC ¶¶ 3, 28, including perhaps even products from other manufacturers, FAC ¶¶ 18 (Caudalie Paris), 20 (Nuxe Paris), 22 (Clarins Paris), 25 (Maille Honey Dijon Mustard) – she fails to plead that she ever saw these signs, websites, or labels, or relied on them, or when and where she did. Thus, her California misrepresentation claims should be dismissed for failure to meet the heightened pleading standard under Rule 9(b).

## B.   Eshelby's Magnuson-Moss Warranty Act Claim Fails.

Eshelby's Magnuson-Moss Warranty Act claim fails for three additional reasons:  (i) Eshelby has not met the jurisdictional requirements under 15 U.S.C. § 2310(d); (ii) Eshelby has not alleged that the value of the products at issue are more than $5 each; and (iii) Eshelby has not alleged a "warranty" as defined under 15 U.S.C. § 2301(6).

### 1.   Eshelby Has Not Met The Jurisdictional Requirements To Bring A Magnuson-Moss Claim.

A Magnuson-Moss class action may not be brought in federal district court if "the action is brought as a class action and the number of named plaintiffs is less than one hundred."  15 U.S.C. § 2310(d)(3)(iii).  Eshelby fails to plead jurisdiction under the Magnuson-Moss Warranty Act because she is the only named plaintiff in this case.

Courts regularly dismiss Magnuson-Moss claims that fail to meet the jurisdictional requirement of one hundred named plaintiffs.  *See, e.g.*, *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (dismissing Magnuson-Moss claim for lack of one hundred named plaintiffs); *Gavilanes v. Gerber Prod. Co.*, No. 1:20 CV-05558, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021) ("Rather, the claim must fail because a claim is not 'cognizable . . . . 'if the action is brought as a class action, and the number of named plaintiffs is less than one

hundred.'");  *Ebin v. Kangadis Food Inc.*, No. 13 CIV 2311 JSR, 2013 WL 3936193, at *1 (S.D.N.Y. July 26, 2013) (dismissing Magnuson-Moss claim for not meeting jurisdictional prerequisites).  Given that there is only one named plaintiff in this case, the jurisdictional requirement is not met.

Eshelby argued in her pre-motion letter to the Court that the Class Action Fairness Act ("CAFA") created an alternative basis for federal jurisdiction over a Magnuson-Moss claim. [ECF 25 at 4 (relying on *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015); *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833 (N.D. Ill. 2008)).] This Court and a more recent 9th Circuit decision has explicitly held the opposite:

> [P]laintiffs take the position that their MMWA claims are still viable if this Court has jurisdiction under CAFA. That position is incorrect. Indeed, it is flatly contradicted by the plain text of the MMWA. As stated above, the MMWA provides that "[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection"—i.e., a suit brought under the MMWA in federal district court—unless the MMWA's independent jurisdictional requirements are met. Since plaintiffs concededly cannot meet the MMWA's jurisdictional prerequisites, their MMWA is dismissed.

*Ebin*, 2013 WL 3936193, at *1; *Floyd*, 966 F.3d at 1035 ("CAFA may not be used to evade or override the MMWA's specific numerosity requirement, and we affirm the district court's dismissal of the MMWA claim.").  This claim should therefore be dismissed.

### 2.     Eshelby Fails To Plead That The Products Cost More Than $5.

Second, the MMWA applies only "to warranties which pertain to consumer products actually costing the consumer more than $5."  15 U.S.C. § 2302(e).  Eshelby fails to allege that any L'Oréal Paris products, let alone the ones she allegedly purchased, cost more than $5. Therefore, her Magnuson-Moss claim must fail.

Courts dismiss Magnuson-Moss claims where the plaintiff fails to plead the value of each product was at least $5.  *See Green v. STi Prepaid, LLC*, No. 10 CIV 2180 JSR GWG, 2010 WL

4055575, at *4 (S.D.N.Y. Oct. 18, 2010), *report and recommendation adopted*, No. 10 CIV.

2180 JSR, 2010 WL 4642349 (S.D.N.Y. Nov. 16, 2010) (dismissing Magnuson-Moss claim

where purchased product was alleged to cost $2); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947,

965 (N.D. Cal. 2013) (dismissing Magnuson-Moss claim where plaintiff failed to plead the value

of the purchased products).  Here, Eshelby has failed to allege how much she paid for any of the

products she purchased, or that they were more than $5.  Thus, her claim should be dismissed.

### 3.        Eshelby Fails To Plead A Warranty As Defined Under MMWA.

Third, Eshelby's Magnuson-Moss claim should be dismissed for the additional

independent reason that she has failed to plead a warranty as defined under the MMWA.  A

warranty under the MMWA is defined as "any written affirmation of fact or written promise . . .

which relates to the nature of the material or workmanship and affirms or promises that such

material or workmanship is defect free or will meet a specified level of performance over a

specified period of time."  15 U.S.C. § 2301(6)(A).

Eshelby here has alleged no such warranty.  Descriptive "warranties" like those alleged in

the FAC are routinely held to be incapable of forming the basis of a Magnuson-Moss claim.  *See,

e.g.*, *Sarr v. BEF Foods, Inc.*, No. 18CV6409ARRRLM, 2020 WL 729883, at *8–9 (E.D.N.Y.

Feb. 13, 2020) (dismissing Magnuson-Moss claim based on allegations that mashed potatoes'

labels including the terms "made with real butter" or "fresh" were false or misleading); *Bowling

v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) (dismissing Magnuson-Moss

claim based on allegations that mouthwash's label claim to "restore enamel" were false or

misleading).

The reasoning of the court in *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-

2413 RRM RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) is instructive.  There, the court

dismissed a Magnuson-Moss claim based on a purportedly misleading "All Natural" label

because (i) the "All Natural" label does not warrant a product free from defect; and (ii) the "All Natural" label does not "constitute a promise that the product 'will meet a specified level of performance over a specified period of time.'" *Id.* at *17.  Similarly, here, the brand L'Oréal Paris is not a warranty that the products are free from defect or a promise that the product "will meet a specified level of performance over a specified period of time."  Even if the use of the word "Paris" was an assertion that the product was manufactured in France, this would thus not constitute a warranty covered by the Magnuson-Moss Warranty Act.

### C.    Eshelby Lacks Standing To Bring Claims For Products Not Purchased.

Without conceding in any way that Eshelby could state a claim as to any product, L'Oréal includes the following additional argument about standing.  If Eshelby has any claim, she has the claim only to a product that she actually purchased and lacks standing to complain about products that she never did.

In her FAC, Eshelby claims to sue for relief about all L'Oréal Paris products and not just the four that she allegedly purchased.  FAC p. 2 fn.1 (defining "Products").  However, the Second Circuit has held that plaintiffs cannot claim injury from products not purchased unless the "claims brought by a purchaser of one product would raise a set of concerns nearly identical to that of a purchaser of another . . . product." *DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (quotation marks omitted).  Products are not sufficiently similar to raise "nearly identical" concerns where the products are different and labeled differently from those purchased, even if there are some similarities in packaging, composition, and labeling. *See, e.g.*, *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 870-71 (N.D. Cal. 2012) (dismissing claims for "white chocolate flavored" products not purchased); *Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *5 (N.D. Cal. Sept. 22, 2016) (dismissing claims for coconut oil products not purchased because "Plaintiff fails to adequately allege that the [unpurchased]

Extra Virgin or Refined Coconut Oil labels are substantially similar to Defendant's [purchased] Organic Virgin Coconut Oil label"); *Alaei v. Kraft Heinz Food Co.*, No. 15CV2961-MMA (DHB), 2016 WL 11621800, at *3 (S.D. Cal. Apr. 22, 2016) (dismissing claims that defendant misleadingly represented its products as being manufactured in the United States for products not purchased because the court could not determine whether the purchased Heinz 57 Sauce was sufficiently similar to the unpurchased "consumable consumer packaged goods" that plaintiff did not more specifically identify); *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at *10 (N.D. Cal. Oct. 29, 2019) (dismissing claims that Panera misleadingly advertised its food products as "clean" against unpurchased, unidentified Panera products as not being sufficiently similar to bagel that was purchased).

The court's reasoning in *Miller* is instructive.  In *Miller*, the plaintiff was suing on five "white chocolate flavored products" that allegedly misleadingly did not contain any white chocolate.  *Id.* at 863.  However, the plaintiff had only purchased one of the products—a package of "Classic White" baking chips.  *Id.*  And while the court acknowledged that "[t]he products have some similarities in packaging, composition, and labeling" in that they all had the brand name "Ghirardelli Chocolate," in each case used words that create a connection to white chocolate such as "classic white" or "white mocha," the court ultimately held that these similarities "do not establish the kind of similarity that courts find persuasive in conferring standing over similar (but unpurchased) products."  *Id.* at 870.  The court further reasoned that plaintiff did not have standing over products he had not purchased because (i) the product he purchased (baking chips) were different from the products not purchased (drink powders and wafers); and (ii) the labeling of each product was different and contained different language.  *Id.* at 870-71.

Similarly, here, Eshelby alleges that she purchased three L'Oréal Paris hair care products and one mascara product, FAC ¶ 62, but the FAC asserts claims against all L'Oréal Paris beauty products not made in France, FAC 2 n.1, ¶ 6.  Even the labels of the L'Oréal Paris products she did allegedly purchase are quite different, let alone the differences between the labels of all L'Oréal Paris beauty products not made in France that she did not purchase.  For example, the FAC provides a picture of the front packaging of three L'Oréal Paris products:





FAC ¶ 28.

The assessment of Eshelby's claims will be about the labels on the products she bought. The wide variety of labels used for the L'Oréal Paris brand precludes singular treatment or analysis, and Eshelby lacks standing to complain because the products are not "nearly identical."

**D.**      **Eshelby Lacks Standing to Seek Injunctive Relief.**

Eshelby lacks standing to pursue injunctive relief such that that claim should be dismissed.  Under Article III, "a plaintiff must demonstrate standing for each claim and form of relief sought." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 86 (2d Cir. 2013) (citation omitted).  "To obtain *prospective* relief, such as a declaratory judgment or an injunction," a plaintiff must show "a sufficient likelihood that he [or she] will again be wronged in a similar way." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (citation omitted).  "Neither 'allegations of *possible* future injury,' nor 'past exposure to illegal conduct' is sufficient to clear the standing bar for injunctive relief." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 355-56 (S.D.N.Y. 2020).

Here, Eshelby fails to show a likelihood of future harm sufficient to impose declaratory or injunctive relief:

*First*, Eshelby has at best alleged a past harm.  In the Second Circuit, "past purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm. Such a past harm is of the kind that is commonly redressable at law through the award of damages . . . ." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (finding injunctive relief inappropriate for past purchasers of Barilla pasta, who were purportedly deceived by the amount (or lack thereof) of pasta in the packaging).

*Second*, Eshelby has not plausibly alleged future harm.  As the Second Circuit held in *Berni*, past purchasers of a product "are not likely to encounter future harm of the kind that makes injunctive relief appropriate" because they "are not bound to purchase a product again— meaning that once they become aware they have been deceived, that will often be the last time they will buy that item." *Id.*  Indeed, Eshelby alleges that she will not be misled into purchasing

L'Oréal Paris products in the future.  *See* FAC ¶ 56.  Thus, Eshelby lacks standing to pursue injunctive relief.  *See Marcavage*, 689 F.3d at 103.

    ***Third***, although Eshelby alleges that she intends to purchase the products "if they were in fact made in France,"  FAC ¶ 58, alleging an intent to purchase a product if it is "re-marketed does not show a real or immediate threat of future injury."  *Duran*, 450 F. Supp. at 356; *see also McNulty v. Polar Corp.*, No. 19 CIV. 8903 (LGS), 2020 WL 5658667, at *2 (S.D.N.Y. Sept. 23, 2020) ("Plaintiff does not have standing to pursue declaratory relief. The Complaint alleges that Plaintiff 'would be interested in purchasing' the Products, if they are produced 'in conformity' with the '100% NATURAL' representation, and that if she had been aware of the misrepresentation, Eshelby would not have purchased the Products at all. Because Eshelby does not seek to purchase the Products while they are produced with synthetic ingredients, there is no likelihood of future harm."); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016).

    Thus, Eshelby's claim and request for injunctive relief fails because if the L'Oréal Paris products are not made in France, Eshelby has alleged she will not purchase them again, precluding future harm.  This claim for relief should be dismissed.

## V.   **CONCLUSION**

    For the foregoing reasons, this Court should dismiss the complaint, and each of its claims, for failure to state a claim under Rule 12(b)(6).

Dated:  May 16, 2022             Respectfully Submitted,

                                *  /s/ Thomas B. Mayhew*
                                Thomas B. Mayhew (CA SBN:183539)
                                Applicant's Name:  Thomas B. Mayhew
                                Firm Name:  Farella Braun + Martel LLP
                                Address:  235 Montgomery Street, 17th Floor
                                City/State/Zip:  San Francisco, CA 94104

Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email:  tmayhew@fbm.com

Attorneys for Defendant,
L'ORÉAL USA, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has

been served on all counsel of record via the Court's ECF system on May 16, 2022.

*/s/ Thomas B. Mayhew*

Thomas B. Mayhew (CA SBN:183539)